IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMAL JOHNSON, #M50117, <br><br>   Plaintiff, <br><br> v. <br><br> REVA ENGLAGE, <br> NURSE GRAYSON, <br> G BABICH, <br> N.P. MOLDENHAUER, <br> CONNIE DOLCE, <br> BRANDY HAGENE, <br> WEXFORD MEDICAL SERVICES, <br> N.P. DEARMOND, <br> SGT. DAVIS, and <br> SGT. HARRIS, <br><br>   Defendants. | Case No. 25-cv-00883-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Jamal Johnson, an inmate in the custody of the Illinois Department of Corrections (IDOC) who is currently incarcerated at Pinckneyville Correctional Center, brings this civil action pursuant to 42 U.S.C. §1983 for violations of his constitutional rights that occurred at Menard Correctional Center (Menard). The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b).

## THE COMPLAINT

Plaintiff alleges the following: On November 8, 2023, Plaintiff injured his knee, tearing his ACL and meniscus. (Doc. 1, p. 5). Plaintiff requested medical attention from Nurse Englage, but she told Plaintiff that her shift was ending. Plaintiff was in severe pain, and he requested medical attention from staff working during the next shift. Plaintiff was then taken to "medical." To be transported to medical, Plaintiff was helped down the stairs and then placed in a wheelchair. Plaintiff was seen by Nurse Grayson, who denied Plaintiff treatment or relief for his pain. Dr. Babich also denied Plaintiff medical treatment and care and informed correctional staff to take Plaintiff back to his cell. Plaintiff was forced to walk up flights of stairs on his injured knee to return to his cell. (*Id.*).

The next day, Plaintiff had a medical appointment with Nurse Practitioner Dearmond. (Doc. 1, p. 5). Dearmond ordered x-rays. The x-rays did not "show anything" so over the next two weeks an MRI was ordered, along with a leg brace and pain medication. (*Id.* at p. 6). Because the leg brace was composed of metal pieces, Plaintiff was admitted to the infirmary for security reasons. He remained in the infirmary for a month and half and still did not receive an MRI. Plaintiff was eventually moved to the North Lowers housing unit in December 2024 and placed on a "security hold." (*Id.*).

By February 2024, Plaintiff still had not received his MRI and so he submitted a grievance. (Doc. 1, p. 6). Shortly, thereafter, he was taken to an outside facility for an MRI, but he never received the results or a follow-up appointment. (*Id.*).

At some point, Sergeant Davis and Correctional Officer Cross found contraband in Plaintiff's cell. (Doc. 1, p. 6). Plaintiff was issued a disciplinary report and placed on "deadlock." (*Id.*). Because Plaintiff was not sanctioned with time in segregation, Sergeant Davis issued Plaintiff a second disciplinary report regarding the same contraband incident. The second disciplinary

report falsely claimed that Plaintiff had threatened and intimidated Davis. (*Id.* at p. 6-7). Following the second disciplinary report, Plaintiff was taken to the segregation unit. (*Id.* at p. 7). However, because Plaintiff's leg brace contained metal, he was removed from segregation and placed back in the infirmary for ten days. (*Id.*).

During his time in the infirmary, Plaintiff was seen by Nurse Practitioner Moldenhauer. (Doc. 1, p. 7). Moldenhauer prescribed medication for Plaintiff's lower back but ignored the "severe injuries to [his] left knee." Plaintiff was then returned to the North Lowers on April 27, 2024. Plaintiff received a third disciplinary report from Sergeant Davis again falsely alleging threatening behavior and intimidation on the part of Plaintiff. Plaintiff was taken to segregation and placed behind a "slammer door." (*Id.*).

On May 14, 2024, Plaintiff was released from segregation and admitted back into the infirmary for four days. (Doc. 1, p. 7). After four days, he was transferred to the North Lowers housing unit. (*Id.*).

On May 19, 2024, Plaintiff submitted an emergency grievance complaining about not receiving a follow-up appointment for his knee or the results after his MRI. (Doc. 1, p. 8). On May 23, 2024, Plaintiff was seen by an orthopedic specialist, who recommended surgery for Plaintiff's torn ACL and meniscus. (*Id.* at p. 8, 34). The specialist directed Plaintiff to continue using his current leg brace, until Plaintiff "received a new one which would help strengthen and mold the left knee in place." (*Id.* at p. 8). The specialist prescribed meloxicam/Mobic, despite Plaintiff informing him and medical staff at Menard that meloxicam did not provide Plaintiff relief for his pain. (*Id.* at p. 8, 34). Upon his return to Menard, Sergeant Harris took the leg brace from Plaintiff for no reason. (*Id.* at p. 9).

Also on May 23, 2024, Plaintiff was issued a "six week lay-in" permit, instructing that Plaintiff was to remain in his cell until his scheduled surgery. (Doc. 1, p. 9). The next day, however,

Plaintiff was instructed to pack-up his property because he was moving to seven gallery, which is only accessible by several flights of stairs. Plaintiff was forced to walk on his knee without any support to his new cell. (*Id.*). Two days later, on May 25, 2024, Plaintiff was issued a low gallery/low bunk permit, but he was not moved for two weeks. During these two weeks, Plaintiff submitted numerous sick call requests explaining that his left knee and leg were swollen and that he was experiencing a lot of pain. Plaintiff was ignored by medical staff. (*Id.*).

Plaintiff submitted another emergency grievance on August 3, 2024. (Doc. 1, p. 9). Warden Wills determined that the grievance was an emergency, and that Plaintiff required surgery. (*Id.*). Plaintiff filed additional grievances in November 2024 grieving that his medical furloughs for his knee were continuously being canceled. (*Id.* at p. 9-10). According to Plaintiff's exhibits, the outside provider canceled the appointment for July 25, 2024, and security canceled the November 6, 2024, appointment because of a lack of availability of transport vehicles. (*Id.* at p. 30). Plaintiff was rescheduled for a date in February 2025. (*Id.*).

## DISCUSSION

Based on Plaintiff's allegations and his articulation of his claims, the Court designates the following counts:

**Count 1:** Eighth Amendment deliberate indifference claim against Englage, Grayson, Babich, Moldenhauer, Harris, Dole, Wexford,[1] and Dearmond for failing to provide Plaintiff adequate medical care for his knee injury and associated pain.

**Count 2:** Fourteenth Amendment due process claim[2] against Sergeant Davis

---

[1] Plaintiff states that he is suing Connie Dolce under the Eighth, Fifth, and Fourteenth Amendments for the delay and denial of medical care. (Doc. 1, p. 13). He also states that he is bringing an Eighth Amendment and Fourteenth Amendment due process claim against Wexford Medical Corp. (*Id.* at p. 14). The Court will analyze Plaintiff's claims against Dolce and Wexford Medical Corp./Wexford Medical Services under the Eighth Amendment only. Plaintiff's substantive due process claims under the Fifth and Fourteenth Amendments are redundant of his Eighth Amendment claim so they are dismissed. *See Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (claims are to be analyzed under the most explicit sources of constitutional protections) (citing *Graham v. Connor*, 490 U.S. 386, 395 n. 10 (1989)).

[2] Plaintiff brings his due process claim against Sergeant Davis under both the Fifth and Fourteenth Amendments. The Fifth Amendment, however, supplies the guarantee of due process to a federal inmate, and so, the Court will analyze Plaintiff's due process claims only under the Fourteenth Amendment. *See Dusenbery v. United States,* 534 U.S. 161,

>for issuing two false disciplinary reports against Plaintiff and having Plaintiff sent to segregation.

**Count 3:** Fifth Amendment and Fourteenth Amendment due process/HIPAA claim against Hagene for disclosing Plaintiff's confidential medical information to security personnel.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[3] pleading standard.**

### Count 1

To plead an Eighth Amendment deliberate indifference claim, a plaintiff must allege: (1) that he suffered from an objectively serious medical condition (objective standard); and (2) that the individual defendant was deliberately indifferent to that condition (subjective standard). *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010); *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (citing *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006)). A medical condition is objectively serious if "'a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson.'" *Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019) (quoting *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)). To satisfy the subjective component, a prisoner must demonstrate that an official knew of and disregarded an excessive risk to inmate health. *Greeno v. Daley,* 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference is a high bar. "Neither negligence nor even gross negligence is sufficient basis for liability; rather, liability attaches only if the conduct is intentional or criminally reckless." *Chapman v. Keltner,* 241 F. 3d 842, 845 (7th Cir. 2001) (citing *Salazar v. City of Chi.,* 940 F. 2d 233, 238 (7th Cir.

---

167 (2002).
[3] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

1991)). Furthermore, when determining whether prison officials have been deliberately indifferent to an inmate's serious medical needs, courts should consider the totality of the received medical care. See Walker v. Peters, 233 F.3d 494, 501 (7th Cir. 2000).

Plaintiff has failed to state a claim for an Eighth Amendment violation against Nurses Englage and Grayson. Plaintiff had a single interaction with each nurse on the day of his knee injury. He sought medical attention initially from Englage, but she refused to help him in the cell house because her shift was ending. (Doc. 1, p. 5). He was then taken to the medical unit where he claims Grayson denied him "medical treatment or relief for [his] severe pain." (Id.). Although he did not receive medical care that day, Plaintiff "was called" back to the medical unit the following day and examined Nurse Practitioner Dearmond. Plaintiff did not have any further interaction with the nurses. As pled, the Court cannot plausibly infer that either Nurse Englage or Nurse Grayson disregarded an excessive risk to his health or safety by delaying his care by a day. At most, these individuals acted with negligence or even gross negligence in failing to provide him immediate treatment, which is not deliberate indifference. See Johnson v. Dominguez, 5 F. 4th 818, 825 (7th Cir. 2021) ("deliberate indifference does not equate to medical malpractice"); Owens v. Duncan, 788 F. App'x 371, 374 (7th Cir. 2019) (a single interaction with staff at sick call did not amount to deliberate indifference); Gutierrez v. Peters, 111 F.3d 1364, 1374 (7th Cir. 1997) ("isolated instances of neglect … cannot support a finding of deliberate indifference"). Accordingly, the facts do not support an Eighth Amendment claim, and Count 1 is dismissed against Englage and Grayson.

Count 1 is also dismissed against Dr. Babich. Plaintiff claims that Dr. Babich was "informed" of his knee injury on November 8, 2023, when it occurred, but failed to provide him medical relief and made him return to his cell, which resulted in Plaintiff having to climb flights of stairs on his injured knee. (Doc. 1, p. 5, 11). Dr. Babic's conduct – having Plaintiff return to his

Page 6 of 14

cell and scheduled with a provider the following day – does not amount to deliberate indifference. Nothing in the Complaint indicates that Dr. Babich was aware that Plaintiff would not receive assistance from staff in walking back to his cell and that Plaintiff was at risk of serious harm by having him wait a day to see a provider. *See Howell v. Wexford Health Sources, Inc.,* 987 F. 3d 647, 660 (7th Cir. 2021) ("a negligent exercise of medical judgment is not enough to show deliberate indifference").

Likewise, Plaintiff has failed to state a claim against Nurse Practitioner Dearmond. Plaintiff asserts that he had an appointment with Dearmond the day after his injury, and Dearmond requested x-rays. (Doc. 1, p. 5). This conduct does not amount to an Eighth Amendment violation. Count 1 is dismissed as to Dearmond.

Count 1 will proceed against Nurse Practitioner Moldenhauer. According to the Complaint, Moldenhauer treated Plaintiff for ten days while he was in the infirmary. (Doc. 1, p. 7). Plaintiff states that during this time Moldenhauer prescribed medication for his "lower back, while clearly ignoring the severe injuries to my left knee," and that Moldenhauer failed to provide or order any medication to relieve his pain. (*Id.* at p. 7, p. 12). He asserts that he had informed medical staff that the Mobic prescribed to him was ineffective at treating his knee pain but was not provided alternative treatment. These allegations are sufficient at this point for Count 1 to proceed against Moldenhauer. *See Arnett,* 658 F.3d at 753-754.

Count 1 will proceed against Sergeant Harris who confiscated Plaintiff's medically prescribed leg brace on May 23, 2024, without medical authorization causing Plaintiff additional injury and pain. (Doc. 1, p. 8, 12). *See Zentmyer v. Kendall Cnty., Ill.*, 220 F.3d 805, 812 (7th Cir. 2000).

Plaintiff has sufficiently pled a deliberate indifference claim against Dolce, described as the individual who oversees the medical department. (Doc. 1, p. 13). Plaintiff claims that he

notified Dolce on numerous occasions that he was not receiving medical treatment, including pain medication, for his leg and knee. He states that she "lied about [his] medical writs being canceled," when in fact they were not. (*Id.* at p. 13-14). Plaintiff asserts that she failed to ensure that he received timely and adequate medical treatment. Count 1 will proceed against Dolce. *See e.g., Perez v. Fenoglio,* 792 F.3d 768, 782 (7th Cir. 2015).

And finally, the Court dismisses Count 1 against Wexford Medical Services/Wexford Medical Corp. (Wexford). Plaintiff claims that Wexford "has a history od delaying or refusing to provide care and medical treatment in an effort to save or reduce cost in regard to individuals in custody." (Doc. 1, p. 14). He goes on to claim that Wexford delayed his medically prescribed and ordered treatment in an effort to cut its cost. (*Id.*). These statements, however, are conclusory, and Plaintiff fails to provide a single allegation in support his claim against Wexford. *See Randle v. Nicholson,* No. 18 C 7890, 2020 WL 7319572, at *4 (N.D. Ill. Dec. 11, 2020) (citing *Woodward v. Corr. Med. Servs. Of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004); *Thomas v. Cook Cnty. Sheriff's Office*, 604 F.3d 293, 303 (7th Cir. 2010)). *See also McCauley v. City of Chi.,* 671 F. 3d 611, 617 (7th Cir. 2011) (holding that where many of "the alleged 'facts' are actually legal conclusions or elements of the cause of action," they may be disregarded on a motion to dismiss).

### Count 2

"The Due Process Clause of the Fourteenth Amendment applies only to deprivations of life, liberty, and property." *Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017). When an inmate raises a procedural due process claim based on false charges and related to disciplinary proceedings, the Court undertakes a two-part analysis. *Id.* The Court first evaluates whether the prisoner was deprived of a protected liberty interest, and then second, evaluates whether the process he was afforded was constitutionally deficient. *Id.* (citing *Hess v. Bd. of Trs. Of S. Ill. Univ.*, 839 F.3d 668, 673 (7th Cir. 2016)).

"Prisoners do not have a constitutional right to remain in the general population." *Isby*, 856 F. 3d at 524. *See also Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013) ("an inmate's liberty interest in avoiding disciplinary segregation is limited") (citing *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009)). A protected liberty interest "is triggered only when the confinement imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Lisle v. Welborn*, 933 F.3d 705, 721 (7th Cir. 2019) (internal quotations and citations omitted). The Court looks to the length of a prisoner's confinement in segregation in combination with the conditions he endured there. *See Kervin v. Barnes,* 787 F.3d 833, 836-37 (7th Cir. 2015).

Here, Plaintiff states that he was initially taken to the segregation unit after being issued the first false disciplinary report but was then released and transferred to the infirmary because of his leg brace. (Doc. 1, p. 7). He then was issued a second false disciplinary report on April 27, 2024, and spent less than twenty days in segregation behind a "slammer door." (*Id.*). This very brief amount of time spent in segregation does not amount to an atypical and significant hardship requiring due process protections. Accordingly, Count 2 is dismissed.

**Count 3**

Plaintiff's claims that Brandy Hagene violated his due process rights and HIPAA because she explained "to a member of security [his] personal medical history." (Doc. 1, p. 8, 13). This allegation fails to state a claim for a constitutional violation or a violation of HIPAA. The Seventh Circuit has yet to recognize a constitutional right to medical privacy. *See Hunter v. Amin,* 583 F. 3d 486, 489-90 (7th Cir. 2009) (finding that a policy requiring a jail officer to be present during psychiatrist examinations did not violate the plaintiff's constitutional rights); *Franklin v. McCaughtry,* 110 F. App'x 715, 718-19 (7th Cir. 2004). Additionally, there is no private right of action to enforce the provisions of Health Insurance Portability and Accountability Act (HIPAA).

See *Stewart v. Parkview Hosp.*, 940 F.3d 1013, 1015 (7th Cir. 2019). *See also Dodd v. Jones,* 623 F.3d 563, 569 (8th Cir. 2010); *Wilkerson v. Shinseki,* 606 F.3d 1256, 1267 n.4 (10th Cir. 2010). Accordingly, Count 3 is dismissed.

### MOTION TO CORRECT PLAINTIFF'S ID NUMBER

The motion is **DENIED as moot.** (Doc. 12). The docket accurately records Plaintiff's ID number as #M50117, and no further court action is needed at this time.

### OFFICIAL CAPACITY CLAIMS

Plaintiff brings his claims against Defendants in their official and individual capacities. Plaintiff, however, only requests monetary damages, and state officials named in their official capacities may not be sued for monetary damages in federal court. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Wynn v. Southward,* 251 F.3d 588, 592 (7th Cir. 2001). Therefore, the official capacity claims directed against these individuals will be dismissed with prejudice.

### MOTION FOR RECRUITMENT OF COUNSEL

Plaintiff has filed a Motion for Recruitment of Counsel (Doc. 3), which is **DENIED**.[4] The Court notes that the motion seeking court assigned counsel in this case is identical to the motion filed by Plaintiff in his other civil case, Case No. 25-cv-00882-SPM. In an attempt to find an attorney on his own, Plaintiff states that he wrote to several law firms asking for assistance on "two separate issues," but "at this time lawyers are reluctant to take case." (*Id*. at p. 1). Plaintiff provides copies of the letters he sent to five law firms seeking representation in both lawsuits. As the Court likewise found in Case No. 25-cv-00882-SPM (Doc. 18), it cannot determine that Plaintiff has made sufficient efforts to find a lawyer based on this limited information – copies handwritten letters with no proof they were actually mailed or received. Thus, Plaintiff has failed

---

[4] In evaluating the Motion for Recruitment of Counsel, the Court applies the factors discussed in *Pruitt v. Mote,* 503 F.3d 647, 654 (7th Cir. 2007) and related authority.

to meet his threshold burden of demonstrating attempts to recruit counsel on his own, prior to seeking assistance from the Court.

The Court also finds that Plaintiff is capable of representing himself. Plaintiff argues that he is unable to proceed pro se because he has "little understanding of courts." (Doc. 3, p. 2). Limited knowledge of civil procedure or the law, however, is not unique to Plaintiff as a pro se litigant and does not necessarily warrant recruitment of counsel. This case is in the very early stages, extensive argument and legal research are not required, and the Court will provide Plaintiff with instructions on deadlines and the discovery process. *See Kadamovas v. Steven,* 706 F.3d 843, 845 (7th Cir. 2013) ("[U]ntil the defendants respond to the complaint, the plaintiff's need for assistance of counsel... cannot be gauged."). As this Court has observed, Plaintiff has some high school education and has demonstrated an ability to clearly communicate with the Court and follow directions. Plaintiff, therefore, is competent to try this matter without representation at this juncture. Once discovery on the merits has commenced, if Plaintiff has significant difficulty, he may refile his motion. Should Plaintiff choose to move for recruitment of counsel at a later date, the Court directs Plaintiff to include additional information about his efforts to obtain a lawyer on his own, such as when he contacted each firm, and also include supporting documentation, such as the letters from the attorneys who declined representation or copies of his payment vouchers for postage.

### DISPOSITION

For the reasons set forth above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** will proceed against Moldenhauer, Harris, and Dolce but is **DISMISSED without prejudice** as to Englage, Grayson, Babich, Wexford, and Dearmond. **COUNT 2** and **3** are **DISMISSED**. Because there are no surviving claims against Englage, Grayson, Babich, Wexford, Dearmond, Davis, and Hagene, they shall be **TERMINATED** as

defendants on the docket.

The Clerk of Court is **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court **SHALL** prepare for Defendants Moldenhauer, Harris, and Dolce the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to the defendants' place of employment. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to file an appropriate responsive pleading to the Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants only need to respond to the issues stated in this Merit Review Order.**

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and (if applicable) his or her attorney were deemed to have entered into

a stipulation that any unpaid costs taxed against the applicant shall be paid from any recovery secured in this action.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: October 30, 2025**

      *s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.